IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **MICHAEL WILLIAMS,** | **CIVAL ACTION** |
| Plaintiff, |  |
| *v.* | **NO. 22-4482-KSM** |
| **CITY OF PHILADELPHIA,** et al., |  |
| Defendants. |  |

**MEMORANDUM**

MARSTON, J.                                                   February 29, 2024

Pro se Plaintiff Michael Williams brings this action against his former employer, Defendant City of Philadelphia.[1]  (Doc. No. 2.)  He claims numerous City employees discriminated, harassed, and retaliated against him on the basis of his race.  (*Id.* at 6, 9–10.)  The City moves to dismiss the Complaint in its entirety.  (Doc. No. 13.)  Williams opposes the motion and argues that he is entitled to default judgment.  (Doc. Nos. 11, 17.)

**I.      BACKGROUND**

**A.      Facts**

Taking the allegations in the Complaint as true,[2] the relevant facts are as follows.

---

[1] In his Complaint, Williams identifies both the City of Philadelphia and the City's Office of Fleet Management as Defendants.  (*See* Doc. No. 2 at 1 (listing both entities as defendants in the case caption); *id.* at 5 (identifying the Office of Fleet Management as the relevant defendant).)  But, as a subdivision of the City, the Office of Fleet Management is not independently subject to suit.  *See, e.g.*, *Monastra v. Del. Cnty. Sheriff's Office*, 49 A.3d 556, 558 (Pa. Commw. Ct. 2012) ("This court has held that a fire department may not be sued as though it were a legal entity separate from the city because the fire department does not have an independent corporate existence."); *Johnson v. City of Erie*, 834 F. Supp. 873, 879 (W.D. Pa. 1993) ("As a sub-unit of the City of Erie government, we find the police department an improper and unnecessary party to this action and will grant the motion to dismiss the department.").  Accordingly, the Office of Fleet Management is dismissed as a Defendant in this case.

[2] "The District Court, in deciding a motion under Fed.R.Civ.P. 12(b)(6), [i]s required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most

Williams alleges that while he was working in the City's Office of Fleet Management, a white coworker referred to him using the N-word on five occasions.[3]  (*Id.*)  He alleges that he reported the conduct to management and Human Resources, but management took no action after the first four incidents.  (*Id.*)  After Williams reported the coworker's conduct, the coworker continued to harass Williams "mentally[,] physically[,] and verbal[ly]," by, among other things, following Williams around the shop and calling him additional names, including "snitch, rat, and so on."  (*Id.* at 6, 9.)  Williams claims that on one such occasion, "an argument ensued," and he was sent home "to defuse this situation and avoid further problems" with the coworker.  (*Id.* at 9.)  Williams was later required to attend a hearing for his own actions during the argument.  (*Id.* ("I was later contacted and told I had to report to an [sic] hearing for hollering and cursing in the shop.").)  After the hearing, Williams was suspended for one day.  (*Id.*)  He was also transferred to a different shop, where his duties changed from "mechanic to custodian and car washer."  (*Id.*)

Williams eventually contacted his union about the discrimination he was experiencing, and union representatives met with members of management.  (*Id.* at 10.)  One week later, the representatives informed Williams that he had been written up a week before, on the same day as their meeting with management.  (*Id.*)  Williams claims "[t]he office of fleet management had a hearing" on the write up without his knowledge and ultimately "found [him] guilty."  (*Id.*)  He was offered a last chance agreement and told that if he did not sign it, he would be fired.  (*Id.*)  It is unclear from the Complaint whether Williams signed the last chance agreement.

Williams states he contacted the Equal Employment Opportunity Commission ("EEOC")

---

favorable to [the plaintiff]."  *Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

[3] Williams alleges that he began experiencing race discrimination on October 30, 2014.  (Doc. No. 2 at 6.)  Other than identifying this initial date, Williams does not identify when any of the alleged conduct occurred.

the next day[4] and not long after, filed a complaint with the EEOC.  (*Id.*)  Williams alleges that

after "filing the complaint [he] was retaliated on [sic] harassed and threatened numerous times

and occasions to be fired for five straight years until [he] was fired for a made up allegations that

[he] wasnt [sic] able to defend [himself] or have witnesses or the truth be told[.]"  (*Id.*)

Finally, Williams alleges that one or two black males witnessed some of the incidents

alleged in the Complaint, but management threatened to fire one of the men if "he told the truth."

(*Id.*)

Williams does not identify the statutory basis for his discrimination claims (*see id.* at 4),

but given the nature of his allegations and the fact that he exhausted administrative remedies

with the EEOC,[5] the Court assumes that his claims are, at minimum, brought pursuant to Title

VII of the Civil Rights Act of 1964 or 42 U.S.C § 1981.  Williams identifies the relevant

categories of discriminatory conduct as:  (1) failure to hire, (2) termination of employment, (3)

failure to promote, (4) failure to stop harassment, (5) unequal terms and conditions of

employment, (6) retaliation, and (7) "lying and threatening [ ] witness[e]s."  (Doc. No. 2 at 5–6.)

### B.      Procedural History

Williams filed his *pro se* Complaint on November 7, 2022 (Doc. No. 2) with a request to

proceed *in forma pauperis* ("IFP") (Doc. No. 1).  The Court initially denied the IFP request

because Williams failed to provide sufficient financial information from which the Court could

determine his ability to pay the fees to commence this action.  (Doc. No. 5.)  Williams was given

30 days to either resubmit his application with the necessary financial information or pay the

filing fee.  (*Id.*)  When Williams failed to do either of those things in the allotted time, the Court

---

[4] Again, it is unclear what Williams means by "the next day."  *See supra* n.3.

[5] Nothing in the Complaint suggests that Williams also exhausted state administrative remedies as required before commencing a claim pursuant to the Pennsylvania Human Relations Act (the "PHRA").

dismissed this action without prejudice for failure to prosecute on January 11, 2023. (Doc. No. 6.)

On May 18, 2023, Williams submitted a letter asking the Court to reopen his case, explaining that the Court's prior orders had been sent to the wrong email address, and submitting a revised application to proceed IFP. (*See* Doc. No. 7.) The Court granted Williams's requests, vacated its Order dismissing this action, and directed the U.S. Marshals Service to serve copies of the summons and Complaint on the City of Philadelphia. (Doc. No. 8.) Service was perfected on July 24, 2023. (Doc. No. 10.) And when the City failed to timely respond to the Complaint, Williams moved for default judgment on September 22, 2023. (Doc. No. 11.)

Attorney Nicole Morris entered an appearance on the City's behalf a few days later (Doc. No. 12) and simultaneously filed an opposition to Williams's motion for default judgment (Doc. No. 14) and a motion to dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 13). Williams opposes the motion to dismiss and argues that he remains entitled to a default judgment against the City. (Doc. No. 17.)

## II.      DISCUSSION

The Court addresses Williams's motion for default judgment before turning to the City's motion to dismiss.

### A.      Motion for Default Judgment

Williams argues that the Court should enter default judgment against the City because the City failed to file a timely response to his Complaint. (*See* Doc. No. 11.) The City acknowledges that its response was untimely but argues that default judgment is nevertheless inappropriate because the delay was due to inadvertence, not bad faith, and because the City has a litigable defense, as outlined in its motion to dismiss. (Doc. No. 14.) The Court agrees with the City.

When a party moves for default judgment, the Court considers the three factors outlined by the Third Circuit in *Chamberlain v. Giampapa*: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." 210 F.3d 154, 164 (3d Cir. 2000); *see also, e.g.*, *Spurio v. Choice Sec. Syst., Inc.*, 880 F. Supp. 402, 404 (E.D. Pa. 1995) (same). Here, Williams cannot show that any of the *Chamberlain* factors are satisfied. First, he was not prejudiced by the City's six-week delay in filing its response, especially since, as the Court finds below, many of Williams's claims are precluded and, therefore, meritless. *See Limehouse v. Delaware*, 144 F. App'x 921, 923 (3d Cir. 2005) ("There was no prejudice to Limehouse because his claims are meritless."). Second, the City has a litigable preclusion defense to most of Williams's claims. *Id.* (finding "the District Court was well within its discretion to deny the default motion" because "the state defendants had a litigable defense"). Third, "there is no evidence of bad faith or dilatory motive" on the City's part. *Id.*; *see also Husain v. Casino Control Comm'n*, 265 F. App'x 130, 133 (3d Cir. 2008) (finding the district court's denial of default judgment was appropriate where the plaintiff "appeared to suffer little, if any, prejudice" and where there was no indication that the defendants' "short delay in responding to his amended complaint was due to any misconduct").

Accordingly, the Court denies Williams's motion for default judgment.[6]

---

[6] In the alternative, the Court denies the motion for default judgment because Williams failed to first seek entry of default under Federal Rule of Civil Procedure 55(a). *See Husain*, 265 F. App'x at 133 ("[E]ntry of default by the Clerk under Federal Rule of Civil Procedure 55(a) constitutes a general prerequisite for a subsequent default judgment under Rule 55(b)."); *Limehouse*, 144 F. App'x at 923 ("Turning to the denial of Limehouse's motion for partial default judgment, the District Court properly denied the motion because Limehouse failed to obtain entry of default prior to seeking a default judgment.").

**B.     Motion to Dismiss**

That leaves the City's motion to dismiss.  (Doc. No. 13.)

**1.      Legal Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court "must accept the allegations in the complaint as true, but [is] not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (quotation marks omitted).  "As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).  That said, the court "may consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Keystone Redevelopment Partners, LLC v. Decker*, 631 F.3d 89, 95 (3d Cir. 2011) (quotation marks omitted).  And when a defendant raises the defense of claim preclusion, the "court may take judicial notice of the record from a previous court proceeding between the parties." *Toscano v. Conn. Gen. Life Ins. Co.*, 288 F. App'x 36, 38 (3d Cir. 2008).

**2.      Analysis**

The City argues that nearly all of Williams's discrimination claims are precluded by the entry of final judgment in a prior lawsuit.  (Doc. No. 13 at 7–8.)  According to the City, the only claim not precluded is Williams's assertion that he was fired in retaliation for filing an EEOC

6

complaint five years earlier.  (*Id.* at 8–9.)  The City argues that this claim also must be dismissed because it fails to state a claim for retaliation.  (*Id.*)  Williams opposes the City's motion, but his brief does not substantively respond to any of the City's arguments.  (*See* Doc. No. 17.)  Instead, he again urges the Court to enter default judgment against the City.  (*Id.*)

As the Court explained above, default judgment is not appropriate in this case. Accordingly, the Court considers the City's arguments on their merits.

### a.        Claim Preclusion

First, the City argues that nearly all of Williams's claims are precluded because he litigated them to final judgment in *Williams v. City of Philadelphia*, No. 18-cv-3875 (E.D. Pa.) (Pratter, J.) ("the 2018 Action").[7]  "Claim preclusion—which some courts and commentators also call *res judicata*—protects defendants from the risk of repetitious suits involving the same cause of action once a court of competent jurisdiction has entered a final judgment on the merits."  *Beasley v. Howard*, 14 F.4th 226, 231 (3d Cir. 2021) (quotation marks omitted).

In the 2018 Action, Williams, through counsel, brought claims against the City of Philadelphia for race discrimination, harassment, hostile work environment, and retaliation pursuant to Title VII and the PHRA.  (*See* Doc. No. 13-1 at ¶¶ 1, 32 (amended complaint filed in the 2018 Action).)  The amended complaint in that case, which was filed August 16, 2019, alleged that Williams was hired by the City's Office of Fleet Management in September 2015, and throughout his employment, he "was berated by his Caucasian co-workers, who called him derogatory names, such as the 'N' word."  (*Id.* at ¶ 17.)  When Williams reported the conduct to

---

[7] The City also attaches a copy of an arbitration award that was entered in 2021 in connection with Williams's termination. (Doc. No. 13-2.) The City does not argue that this award is entitled to preclusive effect, nor does the City explain why the Court should (or could) consider this award at the motion to dismiss stage.

management, he was transferred to a less desirable position in the tire shop.  (*Id.* at ¶¶ 18, 20.)

The 2018 Action also alleged that Williams was wrongly accused of and disciplined for having

an altercation with a City police officer in 2018.  (*Id.* at ¶¶ 21–26.)

On June 28, 2021, Judge Pratter dismissed the 2018 Action with prejudice after the

parties informed the Court that they had settled all of Williams's remaining claims.  *Williams v.*

*City of Philadelphia*, No. 18-cv-3875, Doc. No. 33 (E.D. Pa.); *see also* E.D. Pa. Local R. 41.1(b)

(stating that when the parties to an action notify the Court that they have settled their dispute, the

judge to whom the case is assigned may "enter an order dismissing the action with prejudice,

without costs, pursuant to the agreement of counsel").  The parties' settlement agreement

included a release of liability, in which Williams "release[d] and forever discharge[d] the City of

Philadelphia . . . of all actual and/or potential liability . . . from all actions and causes of

action . . . arising from the claims set forth in Plaintiff's Complaint," including "claims of

discrimination, harassment or retaliation."  (Doc. No. 13-3 at 3.)  That said, the release expressly

excluded all "causes of action Plaintiff may have against the City of Philadelphia which may

have occurred subsequent to the allegations set forth in his Complaint."  (*Id.* at 4.)

Here, the City argues that the Court's June 28, 2021 Order was a final decision on the

merits warranting preclusive effect.  (Doc. No. 13 at 7–8.)  "When a defendant seeks to invoke

claim preclusion based on a federal tribunal's judgment," the defendant must show:  "(1) a final

judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a

subsequent suit based on the same cause of action."  *Beasley*, 14 F.4th at 232 (quotation marks

omitted); *accord CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 194 (3d Cir. 1999).  The

City has satisfied each element.

The 2018 Action, which was dismissed with prejudice after the parties entered a

settlement agreement, resulted in a "final judgment on the merits." *See Phillips v. Transunion, LLC*, Civil Action No. 12–1058, 2012 WL 1439088, at *6 (E.D. Pa. Apr. 25, 2012) ("Plaintiff voluntarily, and with Defendant's consent, dismissed the Prior Action with prejudice. On June 27, 2011, pursuant to Local Rule 41.1(b), we entered an Order dismissing the Prior Action with prejudice. The case was terminated. . . . Accordingly, the first factor has been met."); *Guiles v. Metro. Life Ins. Co.*, No. CIV. A. 00–5029, 2001 WL 1454041, at *1 (E.D. Pa. Nov. 13, 2001) ("A judgment entered with prejudice pursuant to a settlement is a final judgment on the merits for purposes of res judicata."). And there can be no dispute that the 2018 Action and this action involve the same parties—Williams and the City of Philadelphia. (*Compare* Doc. No. 2 at 4, *with* Doc. No. 13-1 at 2.[8]) Thus, the second factor is satisfied.

That leaves the third element—identical causes of action. "In deciding whether two suits are based on the same 'cause of action,' [the Third Circuit] take[s] a broad view, looking to whether there is an 'essential similarity of the underlying events giving rise to the various legal claims.'" *CoreStates Bank, N.A.*, 176 F.3d at 194 (quoting *United States v. Athlone Indus.*, 746 F.2d 977, 984 (3d Cir. 1984)); *see also Athlone Indus.*, 746 F.2d at 984 (explaining that on this issue, courts consider "(1) whether the acts complained of and the demand for relief are the same . . . ; (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same . . . ; and (4) whether the *material* facts alleged are the same"). Additionally, the identity of the cause of action "extends not only to the claims that the plaintiff brought in the first action, but also to any claims the plaintiff could have asserted in the previous lawsuit." *Beasley*, 14 F.4th at 231–32; *see also CoreStates Bank, N.A.*, 176 F.3d at 194

---

[8] In both cases, Williams also listed the "Office of Fleet Management," as a relevant Defendant. (*See* Doc. No. 2 at 5; Doc. No. 13-1 at 2.) But as noted above, *see supra.* n.1, the Office, as a subdivision of the City, is not independently subject to suit.

(explaining that claim preclusion "gives dispositive effect to a prior judgment if a particular issue, although not litigated, *could have been raised* in the earlier proceeding" (quotation marks omitted)).  Finally, because this action involved a final judgment entered pursuant to the parties' settlement agreement, the Court considers the express terms of that agreement and the corresponding release.  *See Toscana*, 288 F. App'x at 38 ("The express terms of a settlement agreement, not merely the terms of the judgment, determine the bounds of preclusion after a settlement."); *see also El v. People's Emergency Ctr.*, 438 F. Supp. 3d 238, 290 (E.D. Pa. 2020) ("The claims in Count I arising out of Plaintiff's eviction are the same as the ones Plaintiff brought in his first lawsuit, which was dismissed after the parties reached a settlement.  As part of the settlement agreement, Plaintiff released all claims occurring before July 20, 2018—the date the release was executed—against all the defendants in that case, including PEC.  The eviction occurred on January 11, 2018.  As to PEC, therefore, these claims are barred from relitigation by the prior case, so they will be dismissed with prejudice.").

With this standard in mind, the Court finds that many of Williams's claims in this action were previously litigated in the 2018 Action.  In both cases, Williams asserted that he was subjected to racial discrimination, harassment, and retaliation at the hands of City employees beginning as early as 2015 when:  (1) his white coworkers repeatedly called him names, including the N-word, and (2) he was wrongly punished and transferred to a less desirable position after reporting their conduct.  These allegations were not only raised in the prior litigation but also contemplated by the release of liability included in the parties' settlement agreement, through which Williams "release[d] and forever discharge[d] the City of Philadelphia . . . of all actual and/or potential liability . . . from all actions and causes of action . . . arising from the claims set forth in Plaintiff's Complaint," including "claims of discrimination,

10

harassment or retaliation." (Doc. No. 13-3 at 3.)  Accordingly, to the extent Williams's

discrimination claims in this case arise from these facts, he is attempting to reassert the "same

cause of action" litigated to final judgment in the 2018 Action.  As such, these claims are

precluded and dismissed with prejudice.

<em>b.      Remaining Claims</em>

That leaves Williams's claims that he was:  (1) written up and offered a last chance

agreement after contacting his union about the discrimination he was allegedly experiencing, and

(2) "retaliated on [sic] harassed and threatened numerous times and occasions to be fired for five

years straight" after filing his EEOC complaint and was ultimately "fired for a made up

allegations [sic]." (Doc. No. 2 at 10.)  The City addresses only the second claim, arguing that

Williams has failed to state a retaliation claim arising from the filing of his complaint with the

EEOC.  (Doc. No. 13 at 8–9.)  The Court agrees.

To state a claim for unlawful retaliation on the basis of race, the plaintiff must allege that

"(1) he engaged in protected activity, (2) his employer took an adverse employment action

against him, and (3) there was a causal connection between his participation in the protected

activity and the adverse employment action." *Estate of Oliva ex rel. McHugh v. New Jersey*, 604

F.3d 788, 798 (3d Cir. 2010); *id*. at 198 n.14 (explaining that the same standard applies to

retaliation claims brought under § 1981 and Title VII).  The City argues that Williams has failed

to allege facts tending to show he was fired *because* he filed an EEOC complaint.  (Doc. No. 13

at 8–9.)  The Court agrees.

To show the requisite casual connection, a plaintiff must allege "either (1) an unusually

suggestive temporal proximity between the protected activity and the allegedly retaliatory action,

or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel.*

*Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).  Here, Williams has not satisfied either

11

prong.  Taking the allegations in the Complaint as true,[9] five years passed between Williams filing a complaint with the EEOC and his termination.  (*See* Doc. No. 2 at 10.)  That gap is too significant to suggest a causal link under the first prong.  *See Long v. Spalding Auto. Inc.*, 337 F. Supp. 3d 485, 491–92 (E.D. Pa. 2018) ("Here, nearly nine months passed between Plaintiff's request for an accommodation and his subsequent termination.  Such a prolonged period of time is not "unusually suggestive" of a retaliatory motive.").  And Plaintiff's conclusory assertion that he was "retaliated on [sic] harassed and threatened numerous times and occasions to be fired" is not a *factual allegation* tending to show a pattern of antagonism between the time he filed the EEOC complaint and the time he was fired five years later.  *See Castleberry*, 863 F.3d at 263 (explaining that when reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court "must accept the allegations in the complaint as true, but [is] not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation" (quotation marks omitted)).[10]

Accordingly, Williams's retaliation claim is dismissed to the extent he argues he was fired because he filed a complaint with the EEOC.  This claim is, however, dismissed without prejudice, and Williams will be given an opportunity to file an amended complaint.  And, as mentioned above, regardless of whether Williams chooses to file an amended complaint, his retaliation claim survives to the extent he argues that he was written up and offered a last chance agreement after contacting his union about the discrimination he was allegedly experiencing.

---

[9] Again, the Court must accept Williams's factual allegations as true for purposes of this Memorandum.  That said, while not factoring into our conclusion that Plaintiff has failed to state a claim for retaliation at this stage, the Court notes that the documents filed by the City call into question when, how, and why the City terminated Williams's employment.  (*See* Doc. No. 13-2.)

[10] Similarly, because Williams has provided only a conclusory assertion that he was "harassed and threatened numerous times and occasions to be fired," he also has not alleged *facts* tending to state a claim for race discrimination or harassment.

### III.     CONCLUSION

In sum, Williams's motion for default judgment is denied, and the City's motion to

dismiss the Complaint in its entirety is granted in part and denied in part.  The motion to dismiss

is denied to the extent Williams alleges that his supervisors retaliated against him after he

reported the alleged discrimination to his union representatives.  The remainder of the motion is

granted.  Williams's Complaint is dismissed with prejudice to the extent his discrimination

claims are based on allegations that:  (1) his white coworkers repeatedly called him names,

including the N-word, and (2) he was wrongly punished and transferred to a less desirable

position after reporting their conduct.  The Complaint is dismissed without prejudice to the

extent Williams alleges that he was terminated in retaliation for filing a complaint with the

EEOC.  As to this final claim, Williams will be given an opportunity to amend his Complaint to

cure the deficiencies identified in this Memorandum, to the extent he can do so in good faith.

An appropriate order follows.