IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL WILLIAMS,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF PHILADELPHIA,<br><br>    Defendant. | CIVAL ACTION<br><br>NO. 22-4482-KSM |

<u>MEMORANDUM</u>

MARSTON, J.                                                                                                   March 14, 2025

Pro se Plaintiff Michael Williams brings this action against his former employer, Defendant City of Philadelphia.  (Doc. Nos. 2, 34.)  On February 29, 2024, the Court dismissed with prejudice all but Williams's two claims for unlawful retaliation under Title VII and § 1981.  (*See* Doc. No. 18 at 13; Doc. No. 19 at 1.)  Williams filed an Amended Complaint on October 3, 2024 (Doc. No. 34[1]), which the City now moves to dismiss (Doc. No. 35).  In response, Williams filed a motion for default judgment, arguing that the City's motion to dismiss was untimely.  (Doc. No. 36.)  For the reasons that follow, the City's motion is granted, and Williams's motion is denied.

**I.    BACKGROUND**

   **A.    Facts**

The Court takes the allegations in the Amended Complaint as true.[2]

---

[1] Although labeled an "affidavit," Doc. No. 34 appears to be one of two copies of a revised amended complaint submitted by Williams on October 3, 2024 (*see* Doc. Nos. 33, 34).  Because Doc. No. 34 includes all the allegations in Doc. No. 33, with the addition of a few pages, the Court views Doc. No. 34 as the operative "Amended Complaint" and cites it in this Memorandum.

[2] "The District Court, in deciding a motion under Fed.R.Civ.P. 12(b)(6), [i]s required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most

Williams, a black man, alleges that while he was working in the City's Office of Fleet Management ("OFM"),[3] he was involved in an altercation with a white coworker. (Doc. No. 34 at 8.)[4] Williams claims the coworker was "curs[ing], us[ing] threatening abusive language, and berat[ing]" Williams in front of five other employees. (*Id.*) After the incident, "district manager" John Deleo interviewed four witnesses about the incident, but he did not question the remaining witnesses or Williams. (*Id.* at 9.) Deleo later told Williams that there were "four witness statements" attesting that Williams "threatened" the white coworker during the altercation. (*Id.*) Williams claims these statements were "lies" and would be contradicted by video evidence of the incident. (*Id.* at 8–9; *see also id.* at 15 (claiming the individuals "made up a weird and crazy accusation and used it against [Williams], to protect [the white coworker]").)

The City later held a hearing to address Williams's conduct in connection with the altercation. (*Id.* at 9.) Williams was represented by his union during the hearing, and he alleges that his union representative repeatedly questioned the thoroughness of Deleo's investigation. (*See, e.g., id.* ("The union asked why wasnt [sic] a statement for [W]illiams available . . . . The union mentioned how come[ the white coworker] wasn't written up? And the union[ ] mentioned [the coworker's] past problems and known ignorant [and] rude demeanor[.]").) At the end of the hearing, Williams was terminated. (*Id.* at 12.) He claims the termination was "for racial reasons" and was purposefully done "before [Williams] had a chance to contact the EEOC," which he is "known to do." (*Id.*; *see also id.* at 14 ("The motive for the lie[s] is so I

---

favorable to [the plaintiff]." *Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

[3] OFM "buys and maintains vehicles for 43 City departments," including "ambulances, garbage trucks, police cruisers, riding mowers, [and] snow plows." *See* https://www.phila.gov/departments/department-of-fleet-services/ (last visited Mar. 12, 2025).

[4] Williams does not identify when the altercation occurred, nor does he provide dates for any other event described in the Amended Complaint.

wont [sic] have or get a chance to make or file a complaint with the EEOC."); *id.* at 16 ("Since I filed a complaint with the EEOC, the OFM had a serious problem with me.").) He also alleges that the termination was meant to "[p]unish" Williams "for arguing with a white male [coworker]." (*Id.* at 17; *see also id.* at 18 ("If a white male starts and initiate[s] an argument and continue[s] to curse and holler at a black innocent male for no reason, and the black male reports this incident and walks away, and later on is fired or terminated for this incident and the white male is never punished and keeps, and still ha[s] his job[, it] is considered DISCRIMINATION.").)

### B.     Procedural History

Williams filed a *pro se* Complaint in this Court on November 7, 2022 (Doc. No. 2), raising numerous discrimination claims against the City, including claims for unlawful termination, racial harassment, and retaliation (*see* Doc. No. 18 at 3 (interpreting Williams's claims as arising under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981)). He simultaneously filed a request to proceed *in forma pauperis* ("IFP") (Doc. No. 1). The Court initially denied the IFP request because Williams failed to provide sufficient financial information from which the Court could determine his ability to pay the fees to commence this action. (Doc. No. 5.) Williams was given 30 days to either resubmit his application with the necessary financial information or pay the filing fee. (*Id.*) When Williams failed to do either of those things in the allotted time, the Court dismissed this action without prejudice for failure to prosecute on January 11, 2023. (Doc. No. 6.)

On May 18, 2023, Williams submitted a letter asking the Court to reopen his case, explaining that the Court's prior orders had been sent to the wrong email address, and submitting a revised application to proceed IFP. (*See* Doc. No. 7.) The Court granted Williams's request and application, vacated its Order dismissing this action, and directed the U.S. Marshals Service

3

to serve copies of the summons and Complaint on the City of Philadelphia.  (Doc. No. 8.)  Service was perfected on July 24, 2023.  (Doc. No. 10.)  And when the City failed to timely respond to the Complaint, Williams moved for default judgment on September 22, 2023.  (Doc. No. 11.)

Attorney Nicole Morris entered an appearance on the City's behalf a few days later.  (Doc. No. 12.)  She simultaneously filed an opposition to Williams's motion for default judgment (Doc. No. 14) and a motion to dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), (Doc. No. 13).  Williams opposed the motion to dismiss and argued that he remained entitled to a default judgment against the City.  (Doc. No. 17.)

On February 29, 2024, the Court denied the motion for default judgment, finding Williams was not prejudiced by the City's delay in responding to the Complaint, that the City had a litigable defense (i.e., claim preclusion), and that there was no evidence of bad faith by the City.  (*See* Doc. No. 18 at 4–5.)  Turning to the City's motion to dismiss, the Court dismissed with prejudice many of Williams's discrimination claims because they were precluded by a final judgment in a prior action that Williams brought against the City.  (*See* Doc. No. 18 at 5–11, 13; Doc. No. 19 at 1.)  The Court also dismissed Williams's claim that the City terminated his employment in retaliation for filing a complaint with the Equal Employment Opportunity Commission ("EEOC"); however, that dismissal was without prejudice to Williams's right to file an amended complaint if he was capable of alleging facts to suggest his termination was because he filed an EEOC complaint.  (Doc. No. 18 at 11.)  The Court did not address Williams's final claim—that the City retaliated against him by writing him up and offering him a last chance agreement after he contacted his union about the discrimination he was allegedly experiencing—

4

because the City had not moved to dismiss that claim.  (*Id.*)

After granting Williams multiple extensions so that he could try to find counsel, the Court explained that Williams would be required to proceed pro se and that any revised amended complaint was due by October 4, 2024.  (Doc. No. 32 at 1 & n.1.)  The Court simultaneously directed the City to respond to the forthcoming revised amended complaint by November 1, 2024.  (*Id.* at 2.)  In accordance with that Order, Williams filed the operative Amended Complaint on October 3, 2024.  (Doc. No. 34.)  The City filed its most recent motion to dismiss on November 27, 2024.  (Doc. No. 35.)  Williams did not substantively respond to that motion, and instead, filed a motion for default judgment, arguing that he is entitled to judgment in his favor because the City's motion to dismiss was untimely.  (Doc. No. 36.)

## II.    DISCUSSION

The Court addresses Williams's motion for default judgment before turning to the City's motion to dismiss.

### A.    Motion for Default Judgment

Williams argues that the Court should enter default judgment against the City because its motion to dismiss was filed on November 27, 2025, which was 26 days after the deadline set by the Court.  (Doc. No. 36.)  Although the Court is concerned by the City's repeated failure to comply with deadlines in this case, the Court nevertheless finds default judgment inappropriate because there is no evidence the delay was caused by bad faith, and because the City has a litigable defense, as outlined in its pending motion to dismiss.

When a party moves for default judgment, the Court considers the three factors outlined by the Third Circuit in *Chamberlain v. Giampapa*: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct."  210 F.3d 154, 164 (3d Cir. 2000); *see also, e.g.*,

*Spurio v. Choice Sec. Syst., Inc.*, 880 F. Supp. 402, 404 (E.D. Pa. 1995) (same). Here, Williams cannot show that any of the *Chamberlain* factors are satisfied. First, he was not prejudiced by the City's almost four-week delay in filing its response, especially since, as the Court finds below, Williams's Amended Complaint fails to cure the deficiencies identified in the Court's February 29, 2024 Memorandum. *See Limehouse v. Delaware*, 144 F. App'x 921, 923 (3d Cir. 2005) ("There was no prejudice to Limehouse because his claims are meritless."). Second, and for the same reasons, the City has a litigable defense to all of Williams's remaining claims. *Id.* (finding "the District Court was well within its discretion to deny the default motion" because "the state defendants had a litigable defense"). Third, "there is no evidence of bad faith or dilatory motive" on the City's part. *Id.*; *see also Husain v. Casino Control Comm'n*, 265 F. App'x 130, 133 (3d Cir. 2008) (finding the district court's denial of default judgment was appropriate where the plaintiff "appeared to suffer little, if any, prejudice" and where there was no indication that the defendants' "short delay in responding to his amended complaint was due to any misconduct"); *Bright v. Giordano's Restaurant*, CIV. A. No. 89–2209, 1989 WL 104820, at *1 (E.D. Pa. Sept. 8, 1989) ("Then, too, if defendant's motion to dismiss is indeed untimely, the fact remains that it was filed before plaintiff had sought or obtained a default judgment, plaintiff has sustained no prejudice from the brief delay, and it would likely amount to an abuse of discretion to deny permission to file the motion late.").

Accordingly, the Court denies Williams's motion for default judgment.[5]

---

[5] In the alternative, the Court denies the motion for default judgment because Williams failed to first seek entry of default under Federal Rule of Civil Procedure 55(a). *See Husain*, 265 F. App'x at 133 ("[E]ntry of default by the Clerk under Federal Rule of Civil Procedure 55(a) constitutes a general prerequisite for a subsequent default judgment under Rule 55(b)."); *Limehouse*, 144 F. App'x at 923 ("Turning to the denial of Limehouse's motion for partial default judgment, the District Court properly denied the motion because Limehouse failed to obtain entry of default prior to seeking a default judgment.").

### B. Motion to Dismiss

That leaves the City's motion to dismiss. (Doc. No. 35.)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court "must accept the allegations in the complaint as true, but [is] not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (quotation marks omitted). However, because Williams is proceeding pro se, we "liberally construe" the allegations in his Amended Complaint. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

The City argues that dismissal is appropriate because Williams has failed to cure the deficiencies identified in the Court's previous Memorandum. (Doc. No. 35 at 10.) The Court agrees. As the Court reminded Williams before he filed the Amended Complaint:

> [T]he **only** causes of action potentially remaining in this case are (1) Plaintiff's claim that his "supervisors retaliated against him after he reported the alleged discrimination to his union representatives," and (2) Plaintiff's claim that he "was terminated in retaliation for filing a complaint with the EEOC."

(Doc. No. 32 at 1 n.2 (quoting Doc. No. 18 at 13).) To state a claim for unlawful retaliation, the plaintiff must allege that "(1) he engaged in protected activity, (2) his employer took an adverse employment action against him, and (3) there was a causal connection between his participation in the protected activity and the adverse employment action." *Estate of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 798 (3d Cir. 2010); *id.* at 198 n.14 (explaining that the same standard

applies to retaliation claims brought under § 1981 and Title VII). Williams has not provided sufficient factual allegations to plausibly state either of his remaining retaliation claims.

The Court begins with Williams's claim that he was written up and offered a last chance agreement[6] in retaliation for contacting his union about the discrimination he was allegedly experiencing. Williams does not mention this claim in his Amended Complaint. (*See generally* Doc. No. 34.) He does not allege that he spoke to the union about his discrimination or that he was written up and offered a last chance agreement (or suffered any other form of adverse action) because of it. Instead, the only allegations involving the union relate to Williams's representation during the hearing that ended in his termination. (*See* Doc. No. 34 at 9.) Accordingly, the Court finds he abandoned his first retaliation claim. *See Kreis v. Northampton Cnty. Prison*, 564 F. Supp. 3d 359, 362 (E.D. Pa. Sept. 29, 2021) (finding the pro se plaintiff "by serially filing Amended Complaints . . . effectively abandoned the claims raised in his initial Complaint and Amended Complaints"); *Kulkin v. SCI Mercer Dep't of Corrs.*, 2015 WL 1431080, at *1 (W.D. Pa. Mar. 27, 2015) (finding "Kulkin has now abandoned the FMLA claim which was previously asserted in Count VI of the Amended Complaint"); *cf. Palakovic v. Wetzel*, 854 F.3d 209, 221 n.13 (3d Cir. 2017) ("In contrast with theories dismissed by a legal ruling, parties voluntarily dropped from an amended complaint do not remain in the case. Accordingly, the claims asserted against the four defendants named in the original complaint who were dropped from the amended complaint . . . are waived and may not be challenged on appeal. We will not consider any claims in the original complaint as they applied to those four defendants.").

---

[6] Typically, a last chance agreement is a contract between an employer and an employee that offers the employee a final opportunity to keep their job in exchange for the employee agreeing to specific conditions and promising to avoid further infractions.

That leaves Williams's claim that he was terminated in retaliation for filing EEOC complaints. The Court previously dismissed this claim without prejudice because Williams failed to allege facts tending to show a causal connection between any EEOC complaint and his termination. As explained above, to state a claim for retaliation, a plaintiff must allege that "there was a causal connection between his participation in the protected activity and the adverse employment action." *Estate of Oliva ex rel. McHugh*, 604 F.3d at 798. To show the requisite casual connection, a plaintiff must allege "either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

Here, Williams once again fails to allege facts to plausibly satisfy either prong. Under the first prong, Williams has not identified when he filed his prior EEOC complaints or when he was terminated, so the Court cannot determine whether the gap between the two is "unusually suggestive." *Cf. Long v. Spalding Auto. Inc.*, 337 F. Supp. 3d 485, 491–92 (E.D. Pa. 2018) ("Here, nearly nine months passed between Plaintiff's request for an accommodation and his subsequent termination. Such a prolonged period of time is not "unusually suggestive" of a retaliatory motive."). Indeed, Williams's only allegations as to timing show that he was fired *before* he had an opportunity to file an EEOC complaint related to the altercation with the white coworker. (*See, e.g.*, Doc. No. 34 at 12 (alleging that he was terminated "before [he] had a chance to contact the EEOC"); *id.* at 14 ("The motive for the lie[s] is so I wont [sic] have or get a chance to make or file a complaint with the EEOC.").)

In addition, Williams's conclusory assertion that because he "filed a complaint with the EEOC, the OFM had a serious problem with me" (Doc. No. 34 at 16), is not a *factual allegation*

tending to show a pattern of antagonism between his prior EEOC complaints and his termination, *see Castleberry*, 863 F.3d at 263 (explaining that when reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court "must accept the allegations in the complaint as true, but [is] not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation" (quotation marks omitted)).; *cf. Robinson v. Se. Pa. Transp. Auth.*, 982 F.2d 892, 895–96 (3d Cir. 1993) (finding there was "sufficient evidence" to show an "intervening pattern of antagonism" where the employer subjected the employee to a "constant barrage of written and verbal warnings, inaccurate point totalings, and disciplinary action, all of which occurred soon after plaintiff's initial complaints and continued until his discharge").

*    *    *

Accordingly, Williams's retaliation claims are dismissed. This dismissal is with prejudice because Williams abandoned one claim and was previously given an opportunity to correct deficiencies in the second, but failed to do so. *See Greene v. Elizabeth Police Dep't*, Civil Action No. 18-8972 (JXN) (CLW), 2023 WL 6233124, at *4 (D.N.J. Sept. 26, 2023) ("Because Plaintiff Abandoned Counts Two, Seven, Eight, and Eleven, the Claims are Dismissed with Prejudice."); *Baldonado v. Avrinmeritor, Inc.*, Civil Action No. 13-833-SLR-CJB, 2014 WL 2116112, at *8 (D. Del. May 20, 2014), *report and recommendation adopted* 2014 WL 2621119 (D. Del. June 10, 2014) ("As Plaintiffs have abandoned this claim, PACCAR and Daimler request that it be dismissed with prejudice. The Court agrees and recommends dismissal of this claim with prejudice." (citation omitted)); *see also Jackson v. Rosen*, CIVIL ACTION NO. 20-2842-KSM, 2020 WL 5095497, at *5 (E.D. Pa. Aug. 28, 2020) ("Having afforded Jackson a prior opportunity to cure this defect, and it appearing that further opportunity

to amend would be futile, the official capacity claims will be dismissed with prejudice."); *A.J. v. Lancaster County*, No. 5:19-cv-01768, 2019 WL 7161686, at *3 (E.D. Pa. Dec. 23, 2019) ("Thus, Parents substantive due process claims are dismissed with prejudice as they have received a prior opportunity to amend their complaint.").

### III. CONCLUSION

Williams's motion for default judgment is denied, and the City's motion to dismiss is granted. An appropriate order follows.